270 P.2d 449

In re FENNER'S ESTATE.

No. 8086.

Supreme Court of Utah.

May 7, 1954.

---

John R. Rampton, Jr., Bountiful, C. Preston Allen, Adam M. Duncan, Salt Lake City, for appellant.

Wade Johnson, Ogden, for respondent.

McDONOUGH, Chief Justice.

Mrs. Cora E. Fenner was, at the time of her death, beneficiary under three life insurance policies taken on the life of her deceased husband, Walter E. Fenner. Each of these policies contained a provision giving Mrs. Fenner, as beneficiary, the option of (a) leaving the net sum due on deposit with interest guaranteed at 3%, (b) accepting the amount due in installments as a life income, or (c) withdrawing the amount held on deposit on an interest due date. The policies further provided:

"In the event of the death of the Insured's said wife, subsequent to the death of the Insured but before the amount due shall have been paid, the amount held under said Option 1, together with any interest accrued thereon, or the commuted value of any unpaid certain installments under said Option 3, as the case may be, shall be divided into the number of equal shares that will provide: * * *" (here a designation of nieces and nephews to take in shares.)

Mrs. Fenner did not exercise her option by making a demand for payment. Accordingly, the insurance carrier held the proceeds and sent to Mrs. Fenner two checks representing interest. After Mrs. Fenner's death, about three months after her husband's death, the principal amount was divided and paid to the designated nieces and nephews in accordance with the provision set out above.

The executors of Mrs. Fenner's estate resisted payment of estate tax on the amounts paid to the nieces and nephews under these policies and the State Tax Commission brought suit. The lower court found the issues against the Commission and approved the Inheritance Tax Report and Appraisement. The single question to be determined on appeal is whether Mrs. Fenner during her lifetime held an interest in the policies taxable under U.C.A.1953, 59–12–3.

■ The proceeds of a policy of life insurance payable to a specific beneficiary or assignee have generally been held not to be subject to state taxes on the death of the insured, in the absence of a statute expressly providing to the contrary, for the reason that the proceeds of such a policy pass by the terms of the insurance contract, and not by the will of the insured or the intestate laws, and the rights of the beneficiary or assignee arise at the time when the policy is issued or the assignment is made rather than upon the death of the insured. In re Killien's Estate, 178 Wash. 335, 35 P.2d 11; Tyler v. Treasurer & Receiver General, 226 Mass. 306, 115 N.E. 300, L.R.A.1917D, 633; In re Voorhees' Estate, 200 App.Div. 259, 193 N.Y.S. 168. For this reason, the proceeds were not taxed by the Utah Tax Commission at the time of the death of Walter E. Fenner, the insured.

■ It is an established principle of law that where a beneficiary survives the insured, however short the length of time may

be between the death of the insured and that of the beneficiary, the rights of a "contingent" beneficiary are lost, and that upon the death of the insured, the benefits immediately become due to the surviving principal beneficiary. Chartrand v. Brace, 16 Colo. 19, 26 P. 152, 12 L.R.A. 209, 25 Am. St.Rep. 235; Dinwiddie v. Metropolitan Life Ins. Co., 204 Ark. 677, 163 S.W.2d 525; Rossetti v. Hill, 9 Cir., 161 F.2d 549, 172 A.L.R. 638. However, the cases construing this point are based upon a consideration of an implied or express condition of the policy that the beneficiary survive the insured in order to collect the proceeds.

In the case of Washburn v. U. S., D.C., 63 F.Supp. 224, a statutory provision of the Act creating National Service Life Insurance conditioning the payment on the principal beneficiary's being alive to *receive* payments was held to prevent the vesting of the principal beneficiary's rights at the time of the death of the insured. Thus the proceeds of the insurance became payable to the contingent beneficiary upon the death of the principal beneficiary prior to the receipt of payment, rather than to the heirs of the principal beneficiary. Likewise, we here construe a provision of the policy itself requiring payment to contingent beneficiaries if the principal beneficiary fails to use her power to appropriate the funds to herself or her estate. This provision distinguishes this case from the above cited cases determining the rights of contingent beneficiaries under other life policies and brings it within the rule of the Washburn case.

Having determined that the payment to the nieces and nephews could have been made pursuant to the contract between Mr. Fenner and the insurance carrier, we now turn to the question of whether the proceeds of the policy changed character by reason of their passing through the control of Mrs. Fenner but remaining unchanged in distributive effect. It is stipulated that the share which each named niece and nephew took under the three policies was identical with the share to which each was entitled under the residual clause of the will of Cora E. Fenner, made with the expressed desire to carry out her husband's wishes.

It is the position of the Commission that since Mrs. Fenner could have demanded payment of the principal amount and, had she done so, the proceeds of the policy would have been taxable to her estate, that her interest amounted to ownership or, at least, ownership subject to a condition precedent which was within her control. The Commission thus contends that the insurance money was a part of Mrs. Fenner's estate and was paid from that estate rather than as a result of Mr. Fenner's insurance contract.

Respondent's contention that the proviso of the contract cited supra created a power of appointment in Mrs. Fenner finds justification in the Restatement of Property, even though she could have appropriated the entire funds to her own use and made them a part of her estate. The Restatement, sec. 323, Intent to Create a Power, reads:

"A conveyance creates a power of appointment if the conveyor manifests an intent that it shall do so and if the conveyance is otherwise effective.

* * * "b. Estate for life with unrestricted power of disposition. A person who holds an estate for life in land or a corresponding interest in a thing other than land may also have a general power of appointment presently exercisable over the remainder and a power to appropriate, sell or consume any part thereof. These broad powers of disposition do not cause the owned interest of such person to be enlarged into an estate in fee simple or corresponding interest. If the powers are not exercised, the remainder or reversion passes to the persons who would have taken it, if the powers had never been created.

* * * "f. Powers created by implication. In limitations which contain no grant of a power in specific language, the form of a gift over after a life estate may be such as to manifest an intent that the life tenant should have the power to dispose of the remainder.

"Illustrations: * * * 11. A, owning Blackacre in fee simple absolute, by will transfers Blackacre "to B for life, and upon B's death if he should die intestate and should not theretofore have disposed of Blackacre, to C and his heirs." B has an estate for life in Blackacre with a general power of appointment by deed or will over the remainder."

The fact that Mrs. Fenner could have withdrawn the funds and placed them in a bank account, which would have been taxable upon her death, is not sufficient to make these funds a part of her estate. By the same conjectural reasoning, she could have withdrawn the funds during her lifetime and distributed them as gifts, and, if not made in contemplation of death, the funds would not be subject to estate tax. Further, if she had chosen to select other heirs than those named in the insurance policy, it would have been necessary for her to withdraw the proceeds and appropriate them to her estate and this certainly limits her power to dispose of the proceeds by will. In holding that what Mrs. Fenner received was a general power of appointment, we are not unmindful of the recent case of In re Loewenstein's Estate, 37 Cal.2d 843, 236 P.2d 566, where the California court held that in obtaining the consent of executors, the principal beneficiary exercised a power to complete a gift in herself, thus cutting off contingent future interests. This case is distinguishable primarily on the basis of the difference in statutes. California's death tax is an inheritance tax on the right to receive property, whereas the Utah tax is held to be an estate tax on the right to transmit property, State Tax Comm. v. Backman, 88 Utah 424, 55 P.2d 171; additionally, the California court based its opinion upon an express policy of statute to impose tax on every transfer made in lieu of or to avoid

the passing of property by will or the laws of succession. Also, in the instant case, Mrs. Fenner took no steps to make the gift absolute in herself, whereas in the Loewenstein case, the holder of the power obtained the necessary consent to appropriate the funds, thus evidencing an intent to exercise dominion over them.

■ It has been held that the grantee can refuse to accept under the power of appointment just as any legatee may decline a legacy, and can then take under the will of the donor, Matter of Lansing's Estate, 182 N.Y. 238, 74 N.E. 882; In re Stone's Estate, 132 Iowa 136, 109 N.W. 455, and that an appointee takes by virtue of the original grant regardless of an election where the interests received under both instruments are the same. Fidelity Trust Co. v. McClain, C.C., 113 F. 152; State v. United States Trust Co., 99 Kan. 841, 163 P. 156, L.R.A.1917C, 975; Emmons v. Shaw, 171 Mass. 410, 50 N.E. 1033; Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825. Following these authorities, we hold that the nieces and nephews received the money under the original instrument and not under Mrs. Fenner's will.

The Tax Commission contends that if Mrs. Fenner's interest is construed as merely a power of appointment, it still falls within the purview of the gross estate statute, U.C.A.1953, 59–12–3:

"The value of the gross estate of a decedent shall be determined by including the value * * * of all property, real or personal, within the jurisdiction of this state, and any interest therein, whether tangible or intangible, which shall pass to any person, in trust or otherwise, by testamentary disposition or by law of inheritance or succession of this or any other state or country, or by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after his death. * * *"

Inasmuch as there is no Utah statute, either in the Revenue or Property Codes, determining the nature of a general power of appointment, we must turn to the common law for a definition. The historical concept that property passes from the donor of the power to the appointee, the donee of the power acting as a conduit lacking ownership of the appointive property, is responsible for the exclusion of the donee's spouse and creditors in the appointive property they would normally have in property owned outright by the donee. Further, in the absence of specific statutory treatment, appointive assets have generally not been included in the gross estate of the donee whether the tax is denominated an estate tax or an inheritance tax. United States v. Field, 255 U.S. 257, 41 S.Ct. 256, 65 L.Ed. 617; Emmons v. Shaw, 171 Mass. 410, 50 N.E. 1033; Commonwealth v. Duffield, 12 Pa. 277. The Federal estate tax since 1918 and the estate and inheritance tax laws of the majority of states now prescribe special tax consequences to powers of appointment. It is under these statutes that the cases fall

which were cited by the Tax Commission for the general proposition that for tax purposes a general power is commonly treated as the equivalent of ownership.

The interest which Mrs. Fenner held in the property did not pass, nor did she make an attempt to pass her power of appointment, but rather attempted to carry out the design of her husband by repeating in her will the amount that each of the nieces and nephews were to take. In State v. United States Trust Co. of New York, supra [99 Kan. 841, 163 P. 157], it is stated:

> " * * * Certainly a power of appointment—the right to designate a beneficiary of a bequest of property—is an interest in the property. In whose property is it an interest? Surely it is an interest in the property of the testator, of the person who created the power of appointment."

■ While we do not question the power of the legislature to make such transfers as this subject to taxation, we cannot agree that they have done so by the general language of the gross estate tax statute.

Counsel for the Tax Commission argue persuasively for the abandonment of these common law concepts on the basis of inequality in the tax burden where, as here, the donee of the power has almost all the indicia and rights of ownership. While we may agree with the public policy expounded,

we are met by a multiplicity of questions which arise in connection with this matter, the determination of which is properly a function of the legislature. The problems involved are pointed up in a survey of the statutes concerning powers of appointment. California, for example, provides that a gift of a power of appointment is a taxable transfer, California Revenue and Taxation Code, Article 5, § 13692 ff., and it would appear that the result under California's Inheritance Tax Statute would thus be the same as under our Estate Tax Statute and the gift of the power would be taxable in the donor's estate. Other states [1] have statutes to the effect that when property passes by virtue of an *exercise* of power, the transfer is taxable. Still other states [2] provide that when property passes either by *exercise or failure to exercise* a power, the transfer is taxable. Washington has a statute, 11202-a, Rem.Rev.Stats., exempting property of a decedent upon which an inheritance tax was paid within the five preceding years upon receipt from another estate. In almost all of these instances, there are exceptions and exemptions to further demonstrate the legislative intent and guide the courts in determining the taxability of the many variations in types of transfers. Thus, it is obvious that this is not merely a matter of judicial construction but rather a subject for legislative action, and since our statutes do not provide for taxation of property

1. Arizona, Delaware, Idaho, Illinois, Iowa, Kentucky, Massachusetts, Mississippi, New Jersey, North Carolina, Ohio, Pennsylvania, Rhode Island, Tennessee, Texas, Washington, West Virginia.

2. Colorado, Michigan, Minnesota, Montana, New Mexico, New York, Wisconsin.

passing under a power of appointment, Mrs. Fenner's estate is not taxable for property not owned by her during her lifetime.

Judgment of the lower court is affirmed. Costs to respondent.

CROCKETT, HENRIOD, and WADE, JJ., and VAN COTT, District Judge, concur.

WOLFE, C. J., being disqualified, does not participate herein.